RECEIVED
IN LAFAYETTE, LA.
MAR 1 3 2014
TONY R. MOORE, CLERK
BY ______ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO: |
| | * | |
| | * | 18 U.S.C. § 641 |
| | * | 18 U.S.C. § 1343 |
| | * | 18 U.S.C. § 2 |
| | * | 7 U.S.C. § 2024(b) |
| VERSUS | * | 18 U.S.C. § 982(a)(2) |
| | * | 18 U.S.C. § 981(a)(1)(C) |
| | * | 7 U.S.C. § 2024(f) |
| | * | |
| ALLEN WOODS, | * | **3:14-cr-00052-01, 02, 03** |
| MARSHALL BROWN, and | * | **JUDGE STAGG** |
| ANTRON GHOLSTON | * | **MAGISTRATE JUDGE HAYES** |

**INDICTMENT**

**THE GRAND JURY CHARGES:**

**COUNT 1**

**Criminal Conspiracy**
**18 U.S.C. § 371**

A. INTRODUCTION

At all times relevant to this Indictment:

1. ALLEN WOODS and MARSHALL BROWN are residents of the Monroe, Louisiana area.

2. In September 2012, ALLEN WOODS and MARSHALL BROWN opened a small grocery store named Brown's Grocery Store, (Brown's) located at 336 Old Sterlington Road, Monroe, Louisiana.

3. From September 2012 to the present, ALLEN WOODS managed and conducted the day-to-day operations of Brown's. MARSHALL BROWN assisted ALLEN WOODS with the day-to-day operations of Brown's.

SUPPLEMENTAL NUTRITION ASSISTANCE PROGRAM

4. The United States Department of Agriculture (USDA), Food and Nutrition Service (FNS) sponsors, supervises, and oversees the Supplemental Nutrition Assistance Program (SNAP), a federal government program formerly known as the Food Stamp Program. SNAP helps qualifying individuals and families buy food.

5. SNAP or food stamp benefits are similar to United States currency in that food stamp recipients can purchase food from grocery retailers at the face value of their food stamp benefits. In most states, food stamp benefits are provided to recipients on an Electronic Benefits Transfer (EBT) card that is used like a bank Automated Teller Machine (ATM) card. In Louisiana, recipients receive their food stamp benefits through Electronic Benefit Transfers (EBT). The food stamp recipients in Louisiana receive an EBT card known as the "Louisiana Purchase" card.

6. From on or about December 1997 continuing to on or about June 2010, the food stamp redemption aspect of the Louisiana Purchase card system was operated under contract by the Automated Clearing House (ACH), J.P. Morgan Chase located in Elk Grove, Illinois. Beginning on or about June 2010 and continuing to the present date, the food stamp redemption aspect of the Louisiana Purchase card system was operated under contract by Automated Clearing House (ACH), State Enterprise Solutions located in Valrico, Florida.

7. Grocery retailers participate in SNAP only with the authorization of USDA-FNS. Authorized retailers may only accept and redeem food stamp benefits in exchange for the sale of

eligible food items. Retailers may not exchange food stamp benefits for cash or any other ineligible items of value such as tobacco products or alcoholic beverages.

8. During the authorization process retailers that participate in SNAP are informed of the prohibitions against accepting food stamp benefits for anything other than eligible food items, and are also notified of the sanctions for prohibited activities, including possible criminal prosecution.

9. Authorized retailers are required to report to USDA-FNS changes from the initial application: specifically dollar amounts of food sales and the percentage of those food sales expected to be food stamp sales, inventory categories, actual inventory stock and size of the store, as well as changes of the store location, name, and ownership.

10. Individuals residing in Louisiana apply for food stamp benefits through a food stamp application form. Once eligibility is determined by the state's Economic Stability Section, the recipient is then issued an EBT card. Recipient's monthly food stamp benefits are transferred onto their EBT card on a certain day of the month. The specific pre-determined monthly food stamp allotment is transferred onto the card each month for the period of authorization determined by the state. In order for Louisiana food stamp recipients to access their electronic benefits to purchase food, they are required to present their Louisiana Purchase card to a USDA-FNS authorized grocery retailer. Unauthorized retailers cannot accept EBT cards. The Louisiana Purchase cards can only be processed by a point-of-sale (POS) terminal designed to accept those EBT cards. After manually entering the information on the EBT card or "swiping" the EBT card through the POS terminal, the food stamp recipient enters a personal identification number (PIN) into the machine's keypad.

11. Immediately after the POS terminal receives the information about a recipient's requested food stamp transaction which happens through the card swipe, PIN number entry, and

retailer's entry of the proposed transaction amount, the POS terminal automatically calls a 1-800 telephone number, which allows the POS terminal to dial into the specific state contractor's computer mainframe system to verify that the amount of benefits requesting to be transacted are available on the recipient's benefit card. Through that contact, the EBT card transaction is either approved or rejected, and the result is communicated back to the POS terminal. If an EBT transaction is approved for a Louisiana Purchase card, then the contracted Automated Clearing House (ACH) will transfer or cause to be transferred funds from each food stamp redemption into the bank account of the authorized retailer to whom the POS terminal was registered. The transfer of funds is placed into an account identified by the authorized retailer. The reimbursement payments made to authorized retailers for their food stamp redemptions are made from federally appropriated funds.

12. Once a food stamp transaction has been completed, the POS terminal records the EBT card account number, the date and time of the transaction, the amount debited from the recipient's food stamp card, and the amount of benefits remaining on the card. A two-sheet receipt is printed from the POS terminal of which one copy is provided to the recipient and one copy kept as an official record for the authorized retailer.

13. On or about September 2012, ALLEN WOODS and MARSHALL BROWN, on behalf of Brown's, caused to be completed in the name of MARSHALL BROWN a Form FNS-252 to be an authorized retailer in SNAP.

14. On or about November 1, 2012, FNS authorized Brown's to participate as a SNAP retailer.

B. SCHEME TO DEFRAUD

15. Beginning on or about September 1, 2012, and continuing to the present, in the Western District of Louisiana, the defendants, ALLEN WOODS and MARSHALL BROWN, devised, intended to devise, and knowingly participated in a scheme to defraud and obtain money from SNAP by means of materially false and fraudulent pretenses, representations, and promises.

C. THE CONSPIRACY

16. From on or about September 1, 2012, and continuing thereafter until the present, in the Western District of Louisiana and elsewhere, the defendants, ALLEN WOODS and MARSHALL BROWN, and others both known and unknown to the grand jury, did knowingly, willfully and unlawfully combine, confederate, conspire and agree together to commit offenses against the United States, to wit: engaging in a fraudulent scheme to accept SNAP benefits for cash, tobacco, and ineligible items, in violation of Title 7, United States Code, Section 2024(b) (SNAP Fraud), and Title 18, United States Code, Section 1343 (Wire Fraud). [7 U.S.C. § 2024(b) and 18 U.S.C. § 1343].

D. OBJECT OF THE CONSPIRACY

17. The object of the conspiracy was to obtain money to which the defendants were not entitled by exchanging SNAP benefits for lesser amounts of cash and by allowing SNAP benefits to be used to purchase ineligible items including, but not limited to, alcohol and tobacco within the Western District of Louisiana.

E. MANNER AND MEANS OF CONSPIRACY AND SCHEME TO DEFRAUD

18. It was part of the conspiracy and scheme to defraud that the defendants, ALLEN WOODS and MARSHALL BROWN, provided, and caused to be provided, ineligible

items to SNAP recipients in exchange for SNAP benefits where said SNAP benefits were provided by the United States for the purchase of qualifying food and nutritional items.

19. It was further part of the conspiracy and scheme to defraud that the defendants, ALLEN WOODS and MARSHALL BROWN caused an application in MARSHALL BROWN's name to be submitted for Brown's to be a retailer in SNAP because ALLEN WOODS had been permanently disqualified from SNAP.

20. It was further part of the conspiracy and scheme to defraud that the defendants, ALLEN WOODS and MARSHALL BROWN, caused the United States to electronically deposit in Brown's business account at Capital One, account number XXX5971, funds for SNAP transactions wherein SNAP recipients purchased ineligible items.

21. It was further part of the conspiracy and scheme to defraud that the defendants, ALLEN WOODS and MARSHALL BROWN, provided, and caused to be provided, to SNAP recipients cash in exchange for SNAP benefits. The cash the defendants, ALLEN WOODS and MARSHALL BROWN, provided and caused to be provided to SNAP recipients was less than the value of the SNAP benefits.

22. It was further part of the conspiracy and scheme to defraud that the defendants, ALLEN WOODS and MARSHALL BROWN, caused the United States to electronically deposit into Brown's business account at Capital One, account number XXX5971, funds for SNAP transactions wherein the defendants, ALLEN WOODS and MARSHALL BROWN, provided and caused to be provided cash to SNAP recipients in exchange for SNAP benefits for less than the value of the SNAP benefits.

23. It was further part of the conspiracy and scheme to defraud that the defendants, ALLEN WOODS and MARSHALL BROWN, engaged, participated, and joined in the scheme to

defraud that from on or about September 1, 2012 and continuing to the present, fraudulently acquired at least $1,500,000 from SNAP.

24. Counts Two through Five are incorporated and hereby alleged as overt acts under the Conspiracy alleged in Count 1.

All in violation of Title 18, United States Code, 371. [18 U.S.C. § 371].

**COUNTS 2-3**

**SNAP Fraud**
**7 U.S.C. § 2024(b)**

The allegations set forth in Count 1 are incorporated and alleged as though fully set forth herein as the scheme to defraud.

On or about the dates set forth below, in the Western District of Louisiana, and elsewhere, the defendants, ALLEN WOODS and MARSHALL BROWN, knowingly used, transferred, acquired, and possessed SNAP benefits of a value of $100 or more, in a manner contrary to Chapter 51 of Title 7, United States Code, that is: United States Department of Agriculture (USDA) SNAP benefits totaling the amounts specified in the table below were acquired by defendants, ALLEN WOODS and MARSHALL BROWN, in exchange for cash in the amounts specified in the table below, and other ineligible items, which was prohibited by statute and regulations governing SNAP:

| **Count** | **Store** | **Date** | **SNAP Benefit Acquired** | **Item Given in Exchange** |
|---|---|---|---|---|
| 2 | Brown's | September 17, 2013 | $178.12 | $80.00 Cash, Cigarettes, Liquor, and Diapers |
| 3 | Brown's | November 4, 2013 | $188.62 | $80.00 Cash, Liquor, Cigarettes, and handbags |

All in violation of Title 7 United States Code, Section 2024(b). [18 U.S.C. § 2024(b)].

## COUNTS 4-5

**Wire Fraud**
**18 U.S.C. § 1343**

The allegations in Count 1 are incorporated and alleged as though fully set forth herein as the scheme to defraud.

On or about the dates listed below in the Western District of Louisiana, and elsewhere, the defendants, ALLEN WOODS and MARSHALL BROWN, for the purposes of executing the aforesaid scheme to defraud and obtain money by false and fraudulent pretenses, representations, and promises, caused to be transmitted by means of wire communication in interstate commerce the writings, signs, signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date of Wire Transmission | SNAP Benefits Acquired | EBT Card Number |
|---|---|---|---|
| 4 | September 17, 2013 | $178.12 | 5044-7600-1319-6239 |
| 5 | November 4, 2013 | $188.62 | 5044-7600-1319-6239 |

All in violation of Title 18 United States Code, Section 1343. [18 U.S.C. § 1343].

## COUNT 6

**Theft of Government Property**
**18 U.S.C. § 641**

A. INTRODUCTION

The allegations in Count 1, Section A. (SNAP), are incorporated by reference.

1. On or about November 1, 2005, ALLEN WOODS opened Big Al's Grocery Store (Big Al's), a small neighborhood grocery store located at 1101 Sherrouse Street, Monroe, Louisiana. ALLEN WOODS managed and conducted the day-to-day operations of Big Al's.

2. In April 2010, ALLEN WOODS purchased for $95,000 commercial real estate property at 336 Old Sterlington Road, Monroe, Louisiana to be operated as a small neighborhood grocery store called Honey's Grocery Store (Honey's). ALLEN WOODS managed and conducted the day-to-day operations of Honey's.

3. ANTRON GHOLSTON is a resident of the Monroe, Louisiana area.

4. In June 2010, ALLEN WOODS purported to sell Honey's to ANTRON GHOLSTON for $100.

5. ALLEN WOODS and ANTRON GHOLSTON were the signatories on the business accounts for Honey's.

6. ALLEN WOODS continued to manage and conduct the day-to-day operations of Honey's until August 2012, the month that Honey's closed its operations.

<u>WOMEN INFANT AND CHILDREN PROGRAM</u>

~~7. The USDA sponsors the Special Supplement Nutrition Program for~~ Women Infant and Children called WIC.

8. Pursuant to the Child Nutrition Act of 1966, 42 U.S.C. § 1786 et. seq., WIC provides infants and children less than five years of age and pregnant, breast feeding, and postpartum women with nutritious food. WIC is sponsored and funded by the USDA, but is administered in Louisiana by the Louisiana Department of Health and Hospital Services (DHHS).

9 To qualify as a WIC recipient, the applicant's income must not exceed 185% of the federal poverty income guidelines.

10. In the state of Louisiana, recipients of WIC benefits receive a food instrument, commonly referred to as a "voucher," at state designated health clinics.

11. The voucher lists the food items that the recipients can obtain from participating grocery vendors (vendors). "Vendors" are retail stores authorized to participate in the WIC program upon application into program and execution of a WIC Vendor Agreement. Vendors sign contracts indicating that they will comply with all the rules and regulations of the WIC program. Authorized vendors in the WIC program are permitted to accept and redeem WIC benefits only in the connection with the sale of eligible WIC items. They are not authorized to accept WIC benefits for ineligible items or from other retailers. When WIC benefits are redeemed, the vendor must identify and record the actual purchase price of the authorized food items.

12. Solutran has been the WIC contracting processing agency for the Louisiana DHHS since 1996. DHHS issues authorized vendor information and pricing information to Solutran via secure File Transfer Protocol site. Solutran stores information in a processing system and it also stores an image of the voucher which can be viewed on the Solutrain Online Accounting Reporting system.

13. During the authorization process, grocery vendors that participate in WIC are informed of the prohibitions against providing items to WIC recipients that are not specifically listed on the voucher. When participating in the WIC program, authorized grocery vendors agree to be held liable for all actions of their employees regarding federal regulations governing the WIC program, including illegal acts and fraud. In the state of Louisiana, authorized grocery vendors must attend annual training regarding the rules and regulations for the administration of the WIC program, which is sponsored by the DHHS.

14. When a WIC recipient presents a voucher to an authorized grocery vendor, the vendor accepts the voucher and provides the recipient the items specified on the voucher at no charge to the WIC recipient. During the transaction, the grocery vendor places the sales total on

the voucher, which represents the total sales amount for the items listed on the voucher. To redeem the vouchers, the vendor completes a reimbursement form (Form WIC-20), attaches the WIC-20 to the voucher, and deposits the WIC-20 and the voucher in the bank account designated to receive payment. The WIC vendor's bank routes the Form WIC-20 and voucher to the Federal Reserve or intermediary bank. Solutran receives the instrument via paper presentment or through an Image Exchange file. After processing the WIC-20 and voucher, Solutran sends a request to DHHS to confirm and verify the accuracy of the voucher. Once the DHHS confirms the voucher, Solutran redeems the voucher via EFT to the vendor's designated bank account.

15. From November 5, 2005, to March 31, 2010, ALLEN WOODS, on behalf of Big Al's, was a participant in SNAP as a retailer.

16. On March 31, 2010, ALLEN WOODS and Big Al's were permanently disqualified from SNAP for noncompliance with SNAP's rules and regulations.

17. On August 30, 2010, ALLEN WOODS and ANTRON GHOLSTON caused a Form FNS-252 to be completed, in the name of ANTRON GHOLSTON, for Honey's to be an authorized retailer in SNAP.

18. On or about December 13, 2010, FNS authorized Honey's to participate as a SNAP retailer.

19. On or about December 10, 2010, ALLEN WOODS and ANTRON GHOLSTON, on behalf of Honey's, caused to be completed a WIC Vendor Application and Agreement in ANTRON GHOLSTON's name for Honey's to be an authorized grocery vendor in the WIC program.

20. On or about in January 2011, Honey's was authorized to participate in the WIC program.

B. OFFENSE

Beginning on or about December 1, 2010, and continuing to on or about August 31, 2012, in the Western District of Louisiana, and elsewhere, the defendants, ALLEN WOODS and ANTRON GHOLSTON, as the owners and operators of Honey's, did knowingly and willfully embezzle, steal, purloin, and convert to his use and the use of another money, property, and benefits in excess of a $1,000 provided by the USDA under the SNAP and WIC programs, such money, property, and benefits being the property of the United States.

All in violation of Title 18 United States Code, Sections 641 and 2 [18 U.S.C. §§ 641 and 2].

## NOTICE OF FORFEITURE

**18 U.S.C. § 982(a)(2), 7 U.S.C. § 2024(f), and 18 U.S.C. § 982(a)(2)**

A. The allegations contained in Count 1 (Conspiracy) and Counts 4-5 (Wire Fraud) of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(2). As a result of committing violations under 18 U.S.C. § 1343 and conspiracy to commit violations of 18 U.S.C. § 1343, the defendants, ALLEN WOODS and MARSHALL BROWN, shall forfeit to the United States of America pursuant to 18 U.S.C. § 982(a)(2) all property constituting or derived from, proceeds obtained directly or indirectly, which includes, but is not limited to, the following:

1. Bank Accounts

Any and all funds associated with Capital One, account number, XXX5971.

B. The allegations contained in Counts 2-3 (SNAP Fraud) of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 7, United States Code, Section 2024(f). As a result of committing a violations under 7

U.S.C. § 2024(b), the defendants, ALLEN WOODS and MARSHALL BROWN, shall forfeit to the United States of America pursuant to 7 U.S.C. § 2024(f) all property, real or personal, used in the transactions or attempted transactions, to commit, or to facilitate the commission of, or proceeds traceable to said offenses, which includes, but is not limited to, the following:

1. Bank Accounts

Any and all funds associated with Capital One, account number XXX5971.

C. The allegations contained in Count 6 (Theft of Government Funds), of this indictment are realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). Upon conviction of the offense in violation of Title 18 United States Code, Section 641 set forth in Count 6 of this Indictment, the defendants, ALLEN WOODS and ANTRON GHOLSTON, shall forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

D. If any property described above as being subject to forfeiture, as a result of any act or omission of any defendant:

1. cannot be located upon the exercise of due diligence;
2. has been transferred or sold to or deposited with a third person;
3. has been placed beyond the jurisdiction of the Court;
4. has been substantially diminished in value; or
5. has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(a) and Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants, up to the value of the property subject to forfeiture.

TRUE BILL:

**REDACTED**

STEPHANIE A. FINLEY
United States Attorney

EARL M. CAMPBELL
Assistant United States Attorney
300 Fannin Street, Suite 3201
Shreveport, Louisiana 71101
(318)676-3600